[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11789
_____

D.C. Docket No. 4:13-cv-00107-WTM-GRS

T.P.,
By and through his parents T.P. and B.P.; T.P., and B.P.,

                                        Plaintiff - Appellant,

versus

BRYAN COUNTY SCHOOL DISTRICT,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 2, 2015)

Before TJOFLAT, JILL PRYOR and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

        This appeal arises under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1400–1482.  It concerns the request by the parents of T.P.,

a child with autism and speech and language disabilities, that their son's school district pay for an independent educational evaluation ("IEE") of T.P. to determine his educational needs.  T.P.'s parents requested this IEE because, they claimed, the evaluation the district conducted more than two years prior was deficient.  The school district denied the parents' request, informing them that it would first conduct its own reevaluation of T.P., and that if they disagreed with the results, they could then seek an IEE.

The school district and parents independently filed requests for a hearing before a state Administrative Law Judge ("ALJ").  The parents claimed, among other things, that the school district had inappropriately denied their request for a publicly funded IEE, and they requested an order requiring the district to pay for an IEE of their son.  The district requested a declaration that its denial was appropriate because the IDEA's two-year statute of limitations to enforce the right to a publicly funded IEE had run.  It also requested the ALJ to order the parents to consent to a reevaluation of T.P.

In separate orders, the ALJ ruled that the statute of limitations had run and ordered the parents to consent to a reevaluation.  The parents filed a civil action in federal district court to review the ALJ's ruling.  On the school district's motion, the District Court dismissed the parents' complaint, holding that the parents'

2

request in the state administrative proceeding was time-barred.  It did not address the ALJ's order requiring the parents to consent to a reevaluation.  The parents appeal the District Court's dismissal.  We hold that their appeal is moot, vacate the District Court's judgment, and remand the case to the District Court with instructions to dismiss the complaint for lack of subject-matter jurisdiction

I.

A.

T.P.'s parents ("the Parents") enrolled him in second grade in Bryan County School District ("the District") in August 2010.  In August and September of 2010, specialists affiliated with the District conducted an initial evaluation[1] of T.P. in several areas of suspected disability.  The purpose of an initial evaluation is to determine whether a child is eligible for special education and related services, and

---

[1] In conducting an evaluation of a child, "the public agency must . . . [u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent . . . ."  34 C.F.R. § 300.304(b); *see* 20 U.S.C. § 1414(b)(2).  The agency may "[n]ot use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child . . . ."  34 C.F.R. § 300.304(b)(2); *see* 20 U.S.C. § 1414(b)(2)(B).  "Upon completion of the administration of assessments and other evaluation measures," a "team of qualified professionals and the parent[s] of the child" must determine whether the child is eligible for special education and related services.  *See* 20 U.S.C. § 1414(b)(4)(A).

3

it is the first step in the process of developing an individual education program

("IEP")[2] for a child with a disability.  *See* 20 U.S.C. § 1414.

The Parents, as members of T.P.'s IEP Team,[3] met with District personnel

on September 30, 2010.  On the basis of the District's initial evaluation, the IEP

Team determined that T.P. was a child with a disability and that he was eligible for

special education services in the District's Autism and Speech Impairment

Program.  The IEP Team then prepared an IEP for T.P., taking into consideration

the results of the initial evaluation, the Parents' concerns, and T.P.'s strengths and

needs.  *See id.* § 1414(d)(3)(A).

---

[2] As we stated in *K.A. ex rel. F.A. v. Fulton County School District*, 741 F.3d 1195 (11th Cir. 2013):

> The IEP is a written statement that describes the child's academic performance
> and how the child's disability affects her education, states measurable educational
> goals and special needs of the child, establishes how the child's progress will be
> measured and reported, and states the services available, based on peer-reviewed
> research, to enable the child to attain the goals, advance educationally, and
> participate with disabled and nondisabled children.

*Id.* at 1201.

[3] An IEP Team is comprised of the child's parents, at least one special-education teacher or provider, a qualified and knowledgeable representative of the local educational agency, a person "who can interpret the instructional implications of evaluation results," "other individuals who have knowledge or special expertise regarding the child," and, if appropriate, the child with a disability.  20 U.S.C. § 1414(d)(1)(B).  Additionally, "if the child is, or may be, participating in the regular education environment," the IEP team must include at least one of the child's regular-education teachers.  *Id.* § 1414(d)(1)(B)(ii).

4

The Parents did not object to the determination that T.P. was a child with a disability or to his IEP.  If they had, they could have requested a so-called "due process hearing" before a state administrative officer.  *See id.* §§ 1415(b)(6), (f)(1)(A).[4]  Nor did they disagree with the initial evaluation.  If they had, they could have requested that the District pay for an IEE of T.P.,[5] which the District then would have had to consider in formulating T.P.'s IEP.  34 C.F.R. § 300.502; *see* 20 U.S.C. § 1415(b)(1); *Schaffer v. Weast*, 546 U.S. 49, 60, 126 S. Ct. 528, 536, 163 L. Ed. 2d 387 (2005).

---

[4] States and local authorities must provide such hearings upon the filing of a complaint by either a parent or school concerning "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  *Id.* §§ 1415(b)(6)(A), (f)(1)(A); *see* 34 C.F.R. § 300.507(a).  In Georgia, due process hearings are conducted by the Office of State Administrative Hearings.  *See* Ga. Code Ann. § 50-13-41(a)(1).

[5] The IDEA's procedural safeguards include the right of parents "to obtain an independent educational evaluation of the child."  20 U.S.C. § 1415(b)(1).  The IDEA's implementing regulations define the scope of this right, clarifying that parents have the right to an IEE at public expense "if the parent disagrees with an evaluation obtained by the public agency."  34 C.F.R. § 300.502(b)(1).  When a parent requests an IEE at public expense, the school must, "without unnecessary delay," either ensure the IEE is provided at public expense or "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate."  *Id.* § 300.502(b)(2).  If the ALJ determines that the school's evaluation is not appropriate, parents are entitled to an IEE at public expense so long as the IEE meets the school's criteria.  *Id.* § 300.502(b).

The IEP Team next met on September 21, 2011, to review whether T.P. was achieving the goals set in his IEP and to revise the IEP as necessary. *See* 20 U.S.C. § 1414(d)(4)(A) (requiring annual-review meetings). T.P.'s father attended the September 2011 annual-review meeting. He did not express concerns regarding the IEP or the 2010 evaluation. The IEP Team again reviewed T.P.'s IEP a year later, on September 19, 2012, at which time the Parents also expressed no disagreement with the IEP or the 2010 evaluation.

## B.

In November 2012, the Parents—now contending that the 2010 evaluation was "improper"—requested the District to pay for an IEE. *See* 34 C.F.R. § 300.502. After several weeks of communication with the Parents, the District denied their request. The District explained that the request was untimely, as the IDEA's two-year statute of limitations had run. *See* 20 U.S.C. § 1415(b)(6)(B) (requiring that states guarantee "an opportunity for any party to present a [due process hearing request] . . . which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint . . . , in such time as the State law allows"); *see also* Ga. Comp. R. & Regs. 160-4-7-.12(3)(a)

6

(providing a two-year statute of limitations for due process hearing requests). Alternatively, the District contended that the request was invalid, as it was not based on a disagreement with the 2010 evaluation. *See* 34 C.F.R. § 300.502(b)(1) ("A parent has the right to an [IEE] at public expense *if the parent disagrees with an evaluation obtained by the public agency* . . . . (emphasis added)).

Despite rejecting the Parents' request for an IEE at public expense, the District acknowledged the Parents' concerns and asked the Parents to allow it to reevaluate T.P.  A triennial reevaluation of T.P. was not due until August 2013. *See* 20 U.S.C. § 1414(a)(2)(B) (requiring local educational agencies to reevaluate children with disabilities "at least once every 3 years, unless the parent and the local educational agency agree that a reevaluation is unnecessary").  The District was required to conduct a reevaluation sooner, however, if it determined that one was warranted.  *See id.* § 1414(a)(2)(A) ("A local educational agency shall ensure that a reevaluation of each child with a disability is conducted . . . if the local educational agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the

7

child warrant a reevaluation . . . .").[6]  The District informed the Parents that if they were dissatisfied with the reevaluation, they could then request an IEE at public expense.  The Parents, however, would not consent to a District-conducted reevaluation[7]; they wanted an IEE at public expense.

### C.

On December 20, 2012, the District filed a request for a due process hearing to determine whether it was entitled to proceed with a reevaluation of T.P.  In the request, it also sought two declarations: first, that the Parents' request for a publicly funded IEE was time-barred because it was made more than two years after the completion of the 2010 evaluation; and second, that the District need not consider, in formulating an IEP for T.P., any IEE the Parents might pay for.

The Parents filed their own request for a due process hearing on January 5, 2013.  They sought an order compelling the District to pay for an IEE and barring

---

[6]  A local educational authority ("LEA") must also conduct a reevaluation if the child's parents or teacher request one.  20 U.S.C. § 1414(a)(2)(A)(ii).  Reevaluations may not occur more frequently than once a year unless the parent and the local educational agency agree otherwise.  *Id*. § 1414(a)(2)(B).

[7] Prior to conducting an evaluation or reevaluation, an LEA must first notify the child's parents of the evaluation procedures it proposes to use, *id.* § 1414(b)(1), and obtain the parents' informed consent to these procedures, *id.* § 1414(a)(1)(D).  If the parents refuse to consent, the LEA may file a request for a due process hearing to override this refusal.  *See id.* §§ 1414(c)(3), (a)(1)(D); 34 C.F.R. § 300.300.

the District from reevaluating T.P.  They argued that this relief was appropriate because the District's refusal to pay for an IEE was improper and it had failed to timely file its hearing request.  The Parents also stated the following: "T.[P.] and Mr. and Ms. P. are entitled to IEE's [*sic*] in the area of psychological evaluation (actually reimbursement for this evaluation if they have paid for it prior to a decision in this matter or otherwise payment to [the psychologist]) . . . ."  This statement appears to be a request for an order compelling the District to reimburse the Parents for the psychological assessment they obtained on December 17–18, 2012.[8]

The parties filed motions for summary determination in their respective cases,[9] and on January 25, 2013, the ALJ rendered his decisions in separate orders.

_____

[8] The Parents alleged other violations of the IDEA's procedural requirements: that the District failed to provide them its criteria for independent evaluators and notice of where IEEs could be obtained, and that its requirement that evaluators must be located within a 150-mile distance from the District was inappropriate.  We do not discuss these claims in greater detail because the Parents have abandoned them on appeal.  *See infra* Part III.A.

[9] The Administrative Rules of Procedure of the Georgia Office of State Administrative Hearings provide, in pertinent part, "A party may move, based on supporting affidavits or other probative evidence, for a summary determination in its favor upon any of the issues being adjudicated on the basis that there is no genuine issue of material fact for determination."  Ga. Comp. R. & Regs. § 616-1-2-.15(1); *see Piedmont Healthcare, Inc. v. Ga. Dep't of Human Res.*, 282 Ga. App. 302, 304–05 (2006) (observing that a summary determination is "similar to a summary judgment" and elaborating that an ALJ "is not required to hold a hearing" on issues properly resolved by summary adjudication).

The ALJ granted the District's motion in the case initiated by the District's due process hearing request, ruling that "the Family's request for an IEE at public expense was barred by the IDEA's statute of limitations." Accordingly, he held that the District did not unnecessarily delay filing, either because the District was not required to defend the 2010 evaluations after the statute of limitations for filing a request for a due process hearing had run or because the District's delay in filing was reasonable. The ALJ also ordered that:

> [T]he family is required to consent to the District's request for triennial evaluations in accordance with 34 C.F.R. § 300.303(b); and the District is not required to consider any IEE the Family has obtained at private expense prior to completion of the District's triennial evaluations until such time as the triennial evaluations have been completed and presented to the Family.

In the case initiated by the Parents' due process hearing request, the ALJ denied the Parents' motion for summary determination. He explained that the Parents were not entitled to relief given the disposition in the District's case, in which the ALJ had decided the issues of "whether the Family's request for IEEs at public expense was timely" and "whether the District failed to timely, and without unnecessary delay, provide the IEEs."[10]

_____

[10] As for the third issue in the Parents' due process hearing—"that the District violated T.P.'s rights by refusing to provide the Family with information regarding where the requested

10

II.

The Parents filed a complaint in the District Court, seeking relief from both ALJ orders.  *See M.M. ex rel. C.M. v. Sch. Bd.*, 437 F.3d 1085, 1097 (11th Cir. 2006) ("The IDEA authorizes an 'aggrieved' party to bring an action in federal court challenging [an] ALJ's final decision." (quoting 20 U.S.C. § 1415(i)(2)(A))).[11]  They requested a declaration that the ALJ had erred in applying the IDEA's two-year statute of limitations for requesting a due process hearing to their request for an IEE; an order requiring the District to pay for an IEE; and relief from the ALJ's order that required them to consent to triennial reevaluations and that declared that the District was not obligated to consider the results of any IEE they obtained.  Additionally, they may have requested

------

IEEs can be obtained and provide other criteria for IEEs at public expense"—the ALJ ruled that it was moot in light of the previous conclusion that the Parents' IEE request was time-barred.

[11] This action "is an independent civil action and not merely a review of a state administrative decision." *M.M. ex rel. C.M. v. Sch. Bd.*, 437 F.3d 1085, 1097 (11th Cir. 2006). The District Court must "hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §§ 1415(i)(2)(C)(ii)–(iii).  "When weighing the evidence, the District Court gives 'due weight' to the ALJ decision, and 'must be careful not to substitute its judgment for that of the state educational authorities.'" *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1178 (11th Cir. 2014) (quoting *Walker Cnty. Sch. Dist. v. Bennett*, 203 F.3d 1293, 1297 (11th Cir. 2000)).

11

reimbursement for the December 17–18 psychological assessment.[12]  They did not,

however, request relief in the form of future compensatory education.

The District moved to dismiss the Parents' complaint, contending that the

ALJ had not erred.  It argued that the two-year statute of limitations barred the

Parents' November 2012 request for an IEE, the District was entitled to conduct a

reevaluation of T.P., and it was not bound to consider any IEE paid for by the

Parents until T.P. had been reevaluated.

The District Court granted the District's motion to dismiss, holding that the

ALJ did not err in concluding that the Parents' due process request was barred by

the IDEA's two-year statute of limitations on filing a due process hearing request.

The court did not mention the Parents' appeal of the ALJ's decision ordering them

to consent to a reevaluation and relieving the District from considering any IEE

---

[12] The Parents' request for reimbursement is rather opaque, and we are uncertain whether it refers to the December 17–18 psychological assessment.  In their prayer for relief, the Parents request that the District Court "issue an order holding that . . . [t]he BCSD shall pay for the IEE's [*sic*] requested with the independent evaluators requested by plaintiffs without further delay and reimburse plaintiffs *for costs already incurred for the IEE's* [*sic*]."  Compl. 21 (emphasis added).  We could have more certainty that the emphasized text refers to the December 17–18 IEEs if we knew that the Parents had, in fact, paid for the December 17–18 psychological assessment, but the Parents have not alleged this fact at any point in the litigation.  In any event, as we explain below, we find that the Parents neither adequately presented nor supported with argument any claim for reimbursement.  *See infra* Part III.A.

12

obtained at private expense.  The Parents made no motion for a new trial or to alter

or amend the judgment.

## III.

Ultimately, we decide this appeal on mootness grounds.  But before turning

to the question of mootness, we pause to note the issues not before us.

## A.

A party abandons a claim the dismissal of which it does not appeal.

*See G.J. v. Muscogee Cnty. Sch. Dist.*, 668 F.3d 1258, 1263 n.2 (11th Cir. 2012)

("The Appellants do not appeal the district court's dismissal of the non-IDEA

claims and have therefore abandoned any claim that the district court erred in

doing so.").  In their brief in opposition to the District's motion to dismiss, the

Parents argued that the only issue before the District Court was whether the

IDEA's two-year statute of limitations barred their claim:

> There are other issues such as whether the hearing officer erred in
> failing to require [the District] to provide prior written notice in
> violation of the IDEA for its own testing and whether the ruling that
> the [the District] could ignore any IEE obtained by Plaintiffs was
> improper.  Yet, those issues are not a part of Defendant's motion to
> dismiss, for it argues Plaintiffs' cause of action should be dismissed
> because of its own two-year time line on asking for IEE's [*sic*].

The District Court, however, ruled that the statute of limitations for requesting a

due process hearing before a state ALJ barred the Parents' entire federal complaint.

13

Despite this ruling, the Parents do not argue on appeal that the District Court erred by treating the statute-of-limitations issue as dispositive of their entire complaint. Accordingly, they abandon any claim they might have that the District Court erred in its treatment of the following four claims: that the ALJ erred by (1) finding the District did not unnecessarily delay filing its due process hearing request, (2) finding the District did not violate their rights by refusing to provide information regarding where the requested IEE could be obtained and providing them with criteria for the IEE, (3) ordering them to consent to a triennial reevaluation, or (4) declaring that the District had no obligation to consider any IEE obtained at private expense. *See G.J.*, 668 F.3d at 1263 n.2.

Additionally, because district courts should not "be expected to construct full blown claims from sentence fragments," appellate courts should not "permit those same fleeting references to preserve questions on appeal." *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A contrary rule would undermine the premise of our adversarial system: "that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.); *see NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory

14

manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

We do not consider any claim the Parents might have made for reimbursement for the psychological assessment they obtained in December 2012 because they have neither adequately presented nor supported with argument such a claim at any stage of this litigation. In their opening brief on appeal, the Parents request "reimbursement for the independent psychological evaluation they obtained." Appellant's Br. 29. Yet they make no argument—let alone argument accompanied by citation—as to why reimbursement is appropriate or whether the psychological assessment even qualifies as an IEE.[13] *Cf. NLRB*, 138 F.3d at 1422.

---

[13] The parties' usage of the terms "evaluations" and "independent educational evaluations" to refer to diagnostic assessments—which the IDEA refers to simply as "assessments," *see, e.g.*, 20 U.S.C. § 1414(b)(3) (referring to "assessments and other evaluation materials used to assess a child")—has plagued this litigation from the outset. The IDEA specifies that the term "evaluation" is a process during which assessments occur. *See id.* § 1414(b)(2) ("In conducting the evaluation, the local educational agency shall . . . use a variety of assessment tools, . . . [and] not use any single measure of assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child"). An evaluation, whether public-agency or independently conducted, includes not only the completion of diagnostic assessments, but also the review of existing data, *see id.* § 1414(c)(1), and determinations of eligibility and educational needs on the basis of the results of assessments and other evaluation materials, *see id.* § 1414(b)(4). Thus, the District conducts an initial evaluation, singular, not initial evaluations, plural; it conducts a reevaluation, singular, not reevaluations, plural; and, relevant here, parents may obtain an IEE at public expense, singular, not IEEs, plural. *Cf.* 34 C.F.R. § 300.502(b)(5) ("A parent is entitled to only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees.").

15

This has been the case throughout the litigation: the Parents requested reimbursement in their request for a due process hearing and in the complaint, but they did so by way of isolated sentence fragments without supporting argumentation or citation and without ever alleging when or if they actually paid for the December 17–18 psychological assessment.

Perhaps the Parents might have successfully prosecuted a claim for reimbursement. But because they have failed to shoulder the burden of pressing any such claim throughout the course of this litigation, we do not address its merits. *See Beaudett*, 775 F.2d at 1278. [14]

### B.

The only remaining issue the Parents raise on appeal is whether the District Court erred in holding that the IDEA right to request an IEE is limited to two years. We do not reach this issue because it is moot.

We "have an obligation to examine *sua sponte* [our] jurisdiction before reaching the merits of any claim." *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir.

---

[14] Under the IDEA, a district court may also award compensatory education if "responsible authorities have failed to provide a handicapped student with an appropriate education." *Draper v. Atl. Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008) (quotation omitted). Because the Parents have not sought this relief, the question of whether their appeal would be moot had they sought it also is not before us.

2003).  Federal jurisdiction does not lie to decide moot issues.  *Sierra Club v. EPA*, 315 F.3d 1295, 1299 (11th Cir. 2002).  This rule derives Article III's case-or-controversy requirement, *id.*, which "subsists through all stages of federal judicial proceedings, trial and appellate," *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1363 (11th Cir. 2006) (quotation omitted).  "'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Id.* at 1364 (quoting *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003)).

Our mootness analysis in this case is driven by the scope of our review under the IDEA.  In reviewing a school district's actions under the IDEA, "a court's inquiry . . . is twofold[:]  First, has the State complied with the procedures set forth in the Act?  And second, is the [IEP] developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982) (footnote omitted).  This appeal concerns only the first, procedural prong of this inquiry.  The Parents do not challenge the substance of the IEPs for the 2010–11, 2011–12, or 2012–13 school years.  Rather, they claim that in November 2012, the District failed to comply with the IDEA's procedural requirement that they be afforded the right to an IEE at public expense.  *See* 20

17

U.S.C. § 1415(b) (listing the opportunity "to obtain an independent educational evaluation of the child" among the IDEA's required procedural safeguards).

"Not every procedural defect results in a violation of the IDEA." *G.J.*, 668 F.3d at 1270.  Such a defect only violates the IDEA if it:

> (I) impeded the child's right to a free appropriate public education;
>
> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
>
> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).  The Parents claim that the District's denial to them of the right to an IEE "significantly impeded [their] opportunity to participate in the decisionmaking process regarding the provision of a [FAPE]" to T.P, *see id.*, as "[t]he right to a publicly financed IEE guarantees meaningful participation throughout the development of the IEP," Doc. 7, at 10 (quoting *Phillip C. ex rel. A.C. v. Jefferson Cnty. Bd. of Educ.*, 701 F.3d 691, 698 (11th Cir. 2012)).  To remedy this alleged procedural injury, they seek an order that the District provide them an IEE at public expense.

The parental right to an IEE is not an end in itself; rather, it serves the purpose of furnishing parents with the independent expertise and information they need to confirm or disagree with an extant, school-district–conducted evaluation.

18

*See Phillip C.*, 701 F.3d at 698; *Schaffer v. Weast*, 546 U.S. 49, 60–61, 126 S. Ct. 528, 536, 163 L. Ed. 2d 387 (2005).  The evaluation in connection with which Parents sought an IEE at public expense—the 2010 initial evaluation of T.P.—is no longer current because more than three years have passed since September 2010.  *See* 20 U.S.C. § 1414(a)(2)(B)(ii).  Regardless of the merits of Parents' case, ordering an IEE at public expense in these circumstances would be futile because the District "cannot be forced to rely solely on an independent evaluation conducted at the parents' behest." *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1160 (11th Cir. 2006) (quotation omitted)); *see also G.J.*, 668 F.3d at 1266 ("The right to a publicly funded independent educational evaluation does not obtain until there is a reevaluation with which the parents disagree.").

Because a reevaluation of T.P. is due, the relief the Parents seek—an order directing the District to pay for an IEE—will no longer redress the procedural injury they allege.  Were we now to direct the District Court to order the District to pay for an IEE, it would not empower the Parents to participate in the IEP process.

19

Thus, the Parents lack a legally cognizable interest in the outcome of the appeal, and their appeal is moot.[15]  *See BankWest, Inc.*, 446 F.3d at 1364.

## IV.

We VACATE the judgment of the District Court and REMAND with instructions to dismiss the complaint for lack of subject-matter jurisdiction.  *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40, 71 S. Ct. 104, 106–07, 95 L. Ed. 36 (1950)).

---

[15] We note also that the "capable of repetition yet evading review" exception to the mootness doctrine does not apply because no "reasonable expectation" exists "that the same complaining party will be subject to the same action again."  *See K.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1200 (11th Cir. 2013).  As our sister court has reasoned in similar circumstances, "each reevaluation that could lead to an IEE request will be based on unique circumstances." *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 858 (9th Cir. 2014).  After T.P. is reevaluated, his parents might not disagree with the reevaluation, they might quickly request an IEE (thus eliding any potential issues regarding the IDEA's statute of limitations), or the District might timely provide him an IEE at public expense.